The Chancellor.
The object of the bill is to restrain the defendants, under certain alleged ordinances of the city council of “the Inhabitants of the City of Perth Amboy,” from altering the grade of the streets and highways of the city of Perth Amboy, mentioned in the said ordinances; and also to enjoin the treasurer of the city from paying to any member of the city council any money, by way of compensation for any services which they, in their official capacity, may render the said city, and to declare the said ordinances void.
The complainants insist—
First, that the said ordinances are illegal, and should be held and declared void, because they were passed in violation of the statute from which the corporation derives its corpoi’ate powers.
The act to incorporate the City of Perth Amboy was passed the 27th of February, 1844. It repealed an old act, incorporating the said city, of 1784, except the ninth section thereof. Among other officers of the said city, the act declares there shall be a mayor, a recorder, three aldermen, and six members of common council; that these officers shall, before they enter upon the duties of office, respectively take and subscribe the oath or affirmation of allegiance to this state, and an oath or affirmation that he will faithfully, impartially, and justly perform all the duties of such office, so far as in him lies, and that such oath or affirmation shall be so taken and subscribed within ten days after the election; that the said officers shall be elected by ballot, by the electors of the said city, on the second Monday of April annually, from among the citizens residing therein; that the mayor, recorder, aldermen, and common council, or the major part, of whom the mayor or recorder shall be one, shall constitute *72 a city council, which shall have power to meet on their own adjournments, and the whole legislative authority shall he exclusively vested therein; provided, no ordinance or by-law be passed, altered, or repealed, without the consent of a majority of all the members thereof.
It thus appears that the city council is composed of eleven members; that all legislative authority is exclusively invested in them; and that no ordinance or by-law can be passed, altered, or repealed, without the consent of six of ,the members.
At the meeting at which the ordinances in question were passed, there were six members only present, the mayor, one alderman, and two members of common council, who were, it is admitted, regularly elected at the annual meeting, and sworn into office, and one Robert Freeman, who assumed to act as an alderman, and Cornelius White, who assumed to act as a member of the common council. It is insisted that neither Freeman nor White had any right to act in their assumed capacities; that Fi'eeman was not an alderman, and that White was not a member of the commoxx council; and that, consequently, the ordinances were passed in violation of the law, which requires all ordinances to be passed by a majority of the city council.
At the annual city election, three aldermen and six members of the common council, the number designated by the charter, were duly elected. One of the aldermen and one of the members of the common council, so elected, neglected to take and subscribe the oaths or affirmations required within ten days after the election. The city council thereupon passed a resolution to fill these vacancies, for the reason of such neglect, on the part of the members elected, in not taking their oaths of office. Freeman and White were then elected to fill the vacancies, and were sworn into office. Their election was unlawful. There is no mode designated by the charter by which vacancies are to be supplied. The power of filling vacancies being incident to a corporation, (Angell & Ames, *73 c. 83, Kyd 79; 2 Kent 277), it has the right, by its by-laws, to prescribe the manner in which such vacancy shall be filled, provided it is not inconsistent with the design of the charter, and does not infringe its provisions. Newling v. Francis, 3 T. R. 189. But the city council had no right to declare who should be the electors. No authority is, by the charter, given to that body to elect its own members ; and, by the common law, there is no such incident appertaining to it, as a constituted body, under the charter which creates it. The law declares that the members constituting the city council shall be elected by the electors of the city by ballot. The city council cannot confer this authority elsewhere, nor can they usurp it themselves. If the power to supply vacancies is incident to this corporation, it must be exercised by the body at large. They only have the power to elect their officers when no other mode is designated.” The power of election reposed in a select body may be only of certain officers; and one class of officers may be made eligible by one select body, and another class by a different. And if it is declared by the charter by whom some officers may be elected, and no provision is made for the election of others, the others must be chosen, of course, by the body at large, by virtue of their incidental authority.” Angell & Ames on Cor. 92, and Ib. 89. “ The power of electing both officers and members being incident to every corporation, it is not necessary that such power should be expressly conferred by the charter. And if the power is not expressly lodged in other hands, (as, for instance, in a body of directors) it must be exercised by the company at large.” “ The power of election, or the supplying of members in the room of such as are removed by death, or otherwise, is said to be a power incident to and necessarily implied in every aggregate corporation, from the principle of self-preservation. But it seldom happens that an opportunity’ is afforded for the application of this principle, because the power of election must be exercised under the modification of the charter *74 or statute, of which the corporation is the mere creature, and which usually prescribes the time and manner of corporate elections, and defines the qualifications of electors.” 2 Kent’s Com. 293.
It does not follow that because such power to fill vacancies is incident to the corporation of “ the Inhabitants of the City of Perth Amboy,” therefore the “city council,” a board of officers of that corporation, in whom certain powers of the body corporate are specifically and exclusively vested, are authorized to supply a vacancy in the office of mayor, or alderman, or member of common council, because, virtute officii, they compose the body of officers who are designated the “ city council.”
I am of opinion, therefore, that Freeman and White were not lawfully members of the city council. It follows that the ordinances were not lawfully passed, and cannot be lawfully enforced, as they were not passed by a majority of all the members of the body, which is-in direct violation of a pi’ovision of the act of incorporation.
It was further insisted, that the election of Freeman and White was unlawful, for another reason, that there were no vacancies.in the respective office of alderman •and member of common council; that the act, in providing that the oaths of office should be taken and subscribed within ten days after the election, was directory only; and that the alderman and member duly elected did not forfeit their offices by their neglect of being sworn in within ten days after their election.
The council, in my judgment, are right in this construction. The neglect to take the oath of office did not ipso facto vacate the office.
The officers elected would have been legally qualified to discharge their duties of office, had they been sworn in after the expiration of the ten days. But an officer of a corporation (unless there is some provision to the contrary) may resign his office, or he may refuse to act; and in either case, his office may be declared vacant, and his *75 place supplied. If, therefore, ho is required to take an oath of office, and he neglects -to do it within the time prescribed by law, while such neglect does not ipso facto vacate his office, the body of which he is a member may declare the office vacant, upon the ground of his refusal or neglect to assume its responsibilities in the mode directed by law.
But the second principal ground upon which the complainants rely is, that it is unlawful for the defendants to enforce these ordinances, because they establish no grade for the streets, and because no such grade was in fact established by the council, either by the ordinances or otherwise.
By the tenth section of the act entitled, “ An act to regulate the laying out of streets and highways in the city of Perth Amboy, and the grading and improvement of the same,” it is enacted, “ that it shall and may be lawful for the city council of the said city to make and establish ordinances and regulations for the levelling, grading, regulating, paving, curbing, flagging, or gravelling of the streets and sidewalks of the said city; to require the work to be done by the owner or occupants of lots fronting or adjoining such streets, and to be superintended by a commissioner appointed for that purpose, who, under the direction of the said city council, shall prescribe the manner in which such work shall be done; and if the owner or legal representative, or guardian of the owner of any lot in front whereof the street or walk shall, by such ordinance or regulation, be directed to be levelled, paved, curbed, graded, regulated, flagged, or gravelled, shall neglect to comply with such ordinance or regulation within two months after the passage and publication of the same, it shall be lawful for the city council to cause the work to be done, agreeably to the ordinance, for such person so neglecting, and to cause a particular account of the work to be rendered to them, and recorded in their minutes, and properly filed,” &e. The act then provides *76 the manner of notifying the owners of such lots of the amount, and of the time and place to make payment, and of selling such lots at public auction, if default be made in the payment of the sum assessed or allowed for the work done. And it gives the option to the city council, instead of selling the lots, to prosecute the owners thereof in a suit at law, and to recover the amount paid by them for the work.
Upon the face of the ordinance of the 81st of August, 1853, and which is the one against which relief is sought, no grades are fixed for the streets. It is ordained that the streets be graded and regulated, but how graded or regulated, is neither specified in the ordinance, nor, by the ordinance, is any reference made to maps, profiles, or to any order or proceedings, by or under the authority of the council, by which it can be ascertained how the grading is to be done. Indeed, it is. admitted by the answer, that at the time this ordinance was passed, no grades for any of the streets had been established, nor had any preparation been made to establish them; and. all that the city council has done since, in reference to the matter, is to approve of a map which the commissioner had made, and order the same to be paid for out of the city treasury.
How could any owner of a lot, in front whereof the street, by such ordinance, wás directed to be graded and regulated, comply with its requirement? And yet, if he did not do the grading and work required within two months after the passage of the ordinance, he was deprived of the privilege of doing it himself; a privilege, which to him might be valuable, but at all events, which the statute secured to him. To enforce this ordinance, under such circumstances, against any land owner of the city, is in violation of his rights, and is unlawful.
But although the ordinance is illegal, for the reasons assigned, the question remains, whether the complainants are entitled to the injunction of this court prayed for iu the bill, • : ■ •
*77 This court is not the proper tribunal to determine the validity of an election of an officer of a municipal corporation, nor of an ordinance of such corporation. If a party’s rights are invaded, and an injury threatened to his property, the court may, in a collateral way, inquire into the legality of the proceedings under color of which the injury is threatened, and may interfere for his protection. But the injury must not he remote or contingent. It must he direct and apparent, so that the court may see the necessity of interfering to prevent it. The court has no authority to interfere simply on the ground of the illegality of the ordinance. It may interfere to protect an individual whose property is attempted to be invaded under color of its authority.
These complainants claim the protection of the court because they “ are holders of real estate in said city, and the situation and value of the property of each of them is directly involved in the said proceedings going on and threatened; and because, in most cases, the proceedings going on are really useless, and will tend to depreciate their property in value.”
If the court can interfere on these grounds, then the owner of land within the jurisdiction of a municipal corporation may question, in this court, the validity of any ordinance of the corporate authorities respecting any real estate within its limits, because the value of his property may be affected by it. This would be assuming a jurisdiction to try the lawful election of officers and the validity of ordinances of corporate bodies upon too slight grounds. Iiow are “ the situation and value of the property of each of these complainants directly involved in these proceedings ?” The mere allegation, amounting to a speculative opinion only of these complainants, is not sufficient for the court to act upon. The injury must be specified, and so pointed out that the court can see it must be an inevitable consequence of the act threatened and complained of. The complainants do not show that *78 the land they own is situated upon any of the streets ordered by the ordinance to be graded. They do not show that their property is invaded, or how the situation or value of their property is affected or “ directly involved.”
They also allege that, as taxpayers of the city, they are entitled to protection; that the ordinance being illegal, the city council cannot enforce the remedy given by the statute against the owners of property fronting on such streets as shall be graded, and that, consequently, the expenses will fall upon the city at large and all its taxable inhabitants. But can this court assume jurisdiction in order to protect the complainants against any such remote and uncertain injury as this ? These land owners may not refuse to do the work, or, if they should, they may not question the remedy against them. In either event, the apprehensions of the complainants will not be realized.
There are some other questions involved in the pleadings, but with the view I have taken of the points already considered, I deem it unnecessary to notice them.
I would suggest, whether the corporation of “the Inhabitants of Perth Amboy” is a proper party to this bill, and whether “the city council” is not a necessary party. There is no complaint made against any act of the corporation. It is the proceedings of the city council that are complained of.
The motion for injunction is denied, with costs.